# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 20-1236V

DONNA PROCTOR,

               Petitioner,

v.

SECRETARY OF HEALTH AND
HUMAN SERVICES,

               Respondent.

Chief Special Master Corcoran

Filed: August 23, 2024

*John Robert Howie, Howie Law, PC, Dallas, TX,* for Petitioner.

*Camille Michelle Collett, U.S. Department of Justice, Washington, DC,* for Respondent.

## RULING ON ENTITLEMENT[1]

On September 21, 2020, Donna Proctor filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"), alleging that she suffered a shoulder injury related to vaccine administration ("SIRVA") as a result of an influenza ("flu") vaccine administered to her on September 23, 2017. Pet. at 1, ECF No. 1.[3] The case was assigned to the Special Processing Unit of the Office of Special Masters.

For the reasons discussed below, I find it more likely than not that the onset of Petitioner's shoulder pain occurred within 48 hours of vaccination; that her pain and

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

[3] Petitioner amended her petition to include an off-Table causation-in-fact claim on January 19, 2023. Am. Pet., ECF No. 41.

reduced range of motion ("ROM") were limited to the shoulder in which the subject vaccination was administered; and that Petitioner is otherwise entitled to compensation under the Vaccine Act.

## I.   Relevant Procedural History

After initiating her claim, Petitioner filed an affidavit, her vaccine administration record, medical records, and a statement of completion. ECF Nos. 6-8. While the case awaited Respondent's medical review, Petitioner submitted additional medical records, a supplemental affidavit, and a settlement demand to Respondent. ECF Nos. 15-16, 18, 21-26. In January 2022, Respondent filed a status report stating he was amenable to informal resolution. ECF No. 28. Despite the parties' efforts, settlement discussions were unsuccessful. *See* ECF Nos. 29-34.

Respondent thereafter filed his Rule 4(c) report on September 12, 2022. ECF No. 36. Respondent argued that the medical records do not show that the onset of her pain occurred within 48 hours of vaccination, as Petitioner's first report of shoulder pain occurred more than four months post-vaccination. *Id.* at 8 (citing Ex. 4 at 30). Respondent further argued that Petitioner's pain was not limited to the arm in which the vaccine was administered, since the records reveal she reported bilateral tremors in the upper extremities. *Id.* (citing Ex. 4 at 30; Ex. 5 at 1-3). More so, Petitioner reported pain extending from her mid-clavicle to her elbow and fingers. *Id.* at 8-9 (citing Ex. 5 at 1).

Petitioner subsequently filed additional affidavits and a motion for a ruling on the record ("Motion") on January 17, 2023. ECF Nos. 39-40. Petitioner contends that she has met her burden of proof for a Table SIRVA claim based on the record. Motion at 1, 18-41. Respondent filed his response to Petitioner's motion ("Response") on February 27, 2023, maintaining his previous arguments and highlighting that Petitioner's main support for her Table SIRVA claim came from witness statements rather than from contemporaneous medical records. *Id.* at 1-4. On March 8, 2023, Petitioner filed her reply ("Reply") and reiterated that she has met her burden for a Table SIRVA claim. ECF No. 43. This matter is now ripe for consideration.

## II.   Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A petitioner may prevail on his claim if he has "sustained, or endured the significant aggravation of any illness, disability, injury, or condition" set forth in the Vaccine Injury Table (the "Table").  Section 11(c)(1)(C)(i). The most recent version of the

Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). If a claimant establishes that he has suffered a "Table Injury," causation is presumed.

Section 11(c)(1) also contains requirements concerning the type of vaccination received and where it was administered, the duration or significance of the injury, and the lack of any other award or settlement. *See* Section 11(c)(1)(A), (B), (D), and (E). With regard to duration, a petitioner must establish that he suffered the residual effects or complications of such illness, disability, injury, or condition for more than six months after the administration of the vaccine. Section 11(c)(1)(D).

Effective for petitions filed beginning on March 21, 2017, SIRVA is an injury listed on the Vaccine Injury Table. *See* Vaccine Injury Table: Qualifications and Aids to Interpretation.  42 C.F.R. § 100.3(c)(10). The criteria are as follows:

> A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following: (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection; (ii) Pain occurs within the specified time-frame; (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

*Id.*

## III.   Relevant Factual Evidence

### A.  Medical Records

At the time of vaccination, Petitioner was fifty-seven years old, and her medical history was noncontributory. Ex. 1. On September 23, 2017, Petitioner received the subject flu vaccine in her left deltoid. Ex. 10 at 2.

Approximately four months post vaccination, on January 25, 2018, Petitioner saw a neurologist for "left arm pain, bilateral upper extremity dysesthesias [abnormal sensation], bilateral upper extremity [("UE")] tremor, and malaise." Ex. 4 at 30. The

neurologist listed the reason for the consultation as "weakness and tremor in left arm after flu shot on 09/23/17." *Id.* Specifically, the "September 23rd flu shot caused excruciating pain of the left upper extremity 'like a harpoon' . . . [t]here has been subsequent tremor that is fluctuating involving bilateral upper extremities. There is dysesthesia involving bilateral upper extremities and supraclavicular region." *Id.* Also, "[t]here was fulminant symptom onset immediately after painful flu shot administration 09/23/17." *Id.* at 33. Petitioner's pain was noted to be "constant" and "over [the] left arm lateral side and shoulder." *Id.* at 30.

A physical examination revealed tenderness to palpation of the left lateral arm, diffuse hyperreflexia, positive Hoffman's signs, and a positional tremor of the UEs. Ex. 4 at 33. The neurologist opined that the differential diagnosis included acute disseminated encephalomyelitis ("ADEM") with peripheral involvement, other autoimmune or paraneoplastic encephalitis. *Id.* Petitioner was prescribed gabapentin. *Id.*

The following week, Petitioner saw another neurologist to undergo an EMG. Ex. 4 a 54. She reported that she had a "flu vaccination in to [sic] the left deltoid in September 2017." *Id.* She had an "acute onset of burning pain with progressive pain in the shoulder and upper arm . . . developed 'heaviness' and weakness in the arm as well as a tremor." *Id.* Petitioner also reported some ecchymosis (bruising) in the axillary region. *Id.* Petitioner's EMG was normal – with no evidence of a left brachial neuritis/plexus injury, a cervical radiculopathy, or an ulnar/radial neuropathy.[4] *Id.* at 54-55.

On February 8, 2018, Petitioner had a visit with her primary care physician ("PCP") for "left arm pain from flu shot." Ex. 4 at 63. Petitioner noted she had a "tremor and intense pain since shot [S]ep. 23, 2017." *Id.* Petitioner clarified that she later "developed [a] tremor in [her] left arm (also in right)." *Id.* at 64. She noted the pain to be in the left shoulder and upper arm, and it was reportedly exacerbated by movement. *Id.* A physical examination revealed "decreased [ROM] (internal > external rotation) . . . no tenderness, no bony tenderness, no deformity[,] and normal strength." *Id.* Petitioner was diagnosed with adhesive capsulitis of the left shoulder; she received a steroid injection in her shoulder and was referred to physical therapy ("PT"). *Id.* at 65.

Petitioner's original treating neurologist emailed her on February 13, 2018, to review her recent workup. Ex. 4 at 29. He reiterated that Petitioner's EMG and labs were normal, but noted that Petitioner's free thyroxine ("T4") level "was elevated[,] which would not contribute to the symptoms of pain [Petitioner] described but could contribute to [her]

---

[4] Petitioner also underwent MRIs of her brain and cervical spine on February 2, 2018. Ex. 4 at 24-25, 168-69. The brain MRI was unremarkable and the cervical spine MRI revealed mild-to-moderate degenerative changes. *Id.* at 40.

tremor." *Id.* The neurologist recommended Petitioner follow up with her PCP for her elevated thyroid levels. *Id.*

The same day, on February 13, 2018, Petitioner underwent an initial PT evaluation. Ex. 5 at 1. Petitioner stated her left UE "feels like its [sic] '200 lbs' and [Petitioner] feels 'insane pain' all the time." *Id.* She "emphasized that the pain on her [left] UE can go from her mid clavicle, shoulder, down to her elbow, and her fingers[.]" *Id.* Petitioner described the pain as an "'ice pick' going into her mid arm" and that she cannot perform activities of daily life ("ADLs") without the help of her husband. *Id.* Regarding the mechanism of her injury, Petitioner stated she "received a flu shot on 9/23/17[,] that felt like a 'harpoon' was driven into her arm. She developed a bruise in her arm pit and midshaft of her lateral upper arm." *Id.* Further, around Halloween 2017, she started to use a brace and "coddle" her left arm; she also noticed tremors in her left UE. *Id.* Petitioner stated she was "beginning to have tremors to her [right] UE" at the time of this visit. *Id.* A physical examination revealed significant ROM limitations with flexion and abduction. *Id.* at 2. Petitioner's diagnoses included adhesive capsulitis of the left shoulder, muscle weakness (generalized), pain in left shoulder, and "stiffness of left shoulder, not elsewhere classified." *Id.* at 1. Petitioner underwent additional sessions of PT to address her symptoms. *Id.* at 2; Ex. 5 at 7-12.

Petitioner had a follow-up with her neurologist on March 1, 2018. Ex. 4 at 75. Since her last visit at the end of January, Petitioner reported that her pain had been "severe but [ROM] has improved. [PT] has helped." *Id.* at 77. She was also using lidocaine cream. *Id.* The neurologist noted that Petitioner had "no new/progressive neurological deficits." *Id.* Upon examination, Petitioner exhibited tenderness to her left arm and hyperreflexia. *Id.* at 79. The neurologist reiterated that Petitioner's EMG showed no evidence of "plexopathy, radiculopathy, or neuropathy." *Id.* The neurologist noted that Petitioner's PCP was treating her for "musculoskeletal shoulder pain with suspected adhesive capsulitis and there has been benefit." *Id.* Petitioner was prescribed Lyrica for her pain and was told to follow up with her PCP "for thyroid function as tremor and hyperreflexia may be related to elevated free T4." *Id.*

On March 9, 2018, Petitioner had a follow-up with her PCP for "left arm pain since 9/23/2017 . . . she didn't have any pain until after she received the [f]lu vaccine now arm is very painful." Ex. 4 at 98. The PCP noted that Petitioner was "[s]till having significant pain" but her history of "tremor – has improved." *Id.* at 100. An examination was positive for decreased ROM and Petitioner displayed a tremor, described as "fine, [in the] hands and fingers." *Id.* at 100-01. Petitioner was assessed with left shoulder pain and an abnormal thyroid (TSH) level. *Id.* at 101.

During Petitioner's March 15, 2018 PT session, she reported "pain from the shoulder all the way down into the [left] hand[,]" as well as a tremor in the left hand. Ex. 5 at 16. Petitioner stated that her pain was unchanged since beginning therapy, but her ROM had improved by 50%. *Id.*

Petitioner saw a pain specialist on referral from her PCP on April 23, 2018. Ex. 4 at 109. Petitioner complained of left arm pain "x September 2017 with muscle spasms due to after [sic] flu shot from CVS." *Id.* at 112. A physical examination revealed decreased ROM of the left shoulder, without pain. *Id.* at 113. Following this examination and a review of Petitioner's prior MRIs, Petitioner was diagnosed with complex regional pain syndrome ("CRPS") of the left upper extremity, reflex sympathetic dystrophy, brachial plexus dysfunction, severe pain of left shoulder, and a herniated cervical disc. *Id.* at 115-18. Petitioner was told to continue PT and obtain an MRI of her left brachial plexus. *Id.* at 118.

One month later, on May 23, 2018, Petitioner returned to her PCP for a follow-up visit to evaluate "left shoulder/left arm pain following flu vaccination 9/2017." Ex. 4 at 159. An examination showed decreased ROM but no other abnormalities. *Id.* at 160. Petitioner's diagnoses included adhesive capsulitis of the left shoulder and CRPS "type 1 of left upper extremity." *Id.* Petitioner was told to continue PT. *Id.*

Petitioner returned to PT for her seventh session on June 7, 2018. Ex. 5 at 25. Petitioner reported "constant pain to the [left] shoulder 'like an ice pick' which extends throughout the entire [left] UE." *Id.* She denied numbness and tingling but did "note burning." *Id.* An examination revealed a worsening of Petitioner's ROM in all directions, with significantly restricted ROM. *Id.* at 25-26. The treater noted Petitioner has "severe limitations in [left] shoulder ROM and [left] UE strength." *Id.* at 27. Further PT was recommended. *Id.* Petitioner attended two additional PT sessions with some improvement in ROM before discontinuing formal treatment in July 2018; she instead relied on her home exercise program ("HEP") to treat her ongoing symptoms. Ex. 5 at 31-36; Ex. 1 ¶ 24.

Petitioner had an x-ray of her left shoulder on November 29, 2018, which was unremarkable. Ex. 6 at 1. An MRI of the left shoulder showed mild supraspinatus tendinosis but no tear was noted. *Id.* at 3. Following her break in PT, Petitioner had one additional session in January 2019. Ex. 5 at 37. After that session, she again decided to forego PT and continue with her HEP. *Id.* at 38.

There is a subsequent treatment gap of more than two years, with the next medical visit relevant to the matter occurring on April 28, 2021. At that time, Petitioner filled out a

form to return to PT.[5] Ex. 11 at 8. She now noted sharp, intermittent left shoulder and left arm pain. *Id.* Petitioner reported the date of onset as "September 23, 2017," and stated that she had a "vaccine injury." *Id.* at 9.

During a July 14, 2021 PT visit, Petitioner described the "mechanism of shoulder injury" as the "jabbing of [the] flu vaccine into [her] arm leading to [a] Shoulder Injury Related to Vaccine Administration." Ex. 11 at 19. She described her left arm as feeling like "200 lbs and she finds herself 'babying' it." *Id.* at 21. She also reported that her pain "radiates to [left] lateral deltoid muscle belly" but "no further than [the] proximal 1/3 of [the] extremity." *Id.* at 19, 21. Petitioner exhibited limited ROM in all shoulder planes of motion. *Id.* at 21. Additional PT was recommended, and Petitioner attended 12 visits through August 25, 2021. *Id.* at 21-62. Petitioner subsequently returned to PT from September 1, 2021 – February 2, 2022. *See generally,* Ex. 13. No additional medical records have been filed.

### B. Affidavit Evidence

In her affidavit, signed on September 22, 2020, Petitioner recalled that "[a]t the time [her] vaccination was administered . . . [she] felt like [she] was being struck by a harpoon." Ex. 1 ¶ 4. She explained that the pain was "immediately excruciating." *Id.* Petitioner noted that she told the pharmacist about her pain and when she did, "the pharmacist . . . stat[ed] that [Petitioner] was one of the first people the pharmacist had ever vaccinated." *Id.* Petitioner recalled that, later that day, she "took ibuprofen and applied ice to [her] left arm." *Id.* She stated that she continued to have "non-stop pain" over the following weeks; she accordingly treated with ice/heat, topical lidocaine cream, and ibuprofen/acetaminophen – per her husband's suggestion (a medical doctor).[6] *Id.* ¶ 5.

In Petitioner's supplemental affidavit, signed on January 16, 2023, Petitioner explained that she turns to her husband when she has medical issues. Ex. 15 ¶ 2. She thus told him about the excruciating pain she felt when receiving the injection "[u]pon arriving home" that day. *Id.* Petitioner noted that when her pain was ultimately unrelenting, she sought formal treatment. *Id.* ¶ 6.

---

[5] The medical records state that Petitioner was referred to PT by "Peter H. Proctor, MD" – Petitioner's husband. Ex. 11 at 19. The records from this visit do not include visit notes but rather appear to be similar to an intake questionnaire. *See id.* at 8-15.

[6] Petitioner does not identify her husband's area of expertise. However, Petitioner's January 25, 2018 visit notes state that her husband is a dermatologist. Ex. 4 at 30. Despite this entry, Petitioner's husband attests that he is a medical toxicologist. Ex. 14 ¶ 10.

Petitioner addressed her visit notes that contain reports of pain in the entire left arm, explaining that "at times, [her shoulder and left upper arm pain] was so severe that it felt like [her] entire arm hurt." Ex. 15 ¶ 7. She also clarified that her tremors did not begin at the time of her vaccination, but instead "at least a month or two after [her] vaccination, if not longer." *Id.* ¶ 6.

Petitioner's husband, Dr. Peter Proctor, authored an affidavit signed on January 16, 2023. He recalled that "on arriving home" from the subject vaccination, Petitioner complained of excruciating pain and that she was "'struck with a harpoon' . . . when the CVS pharmacist jabbed the needle into her left arm." Ex. 14 ¶ 1. Dr. Proctor explained that he recommended Petitioner take over-the-counter remedies and prescription medications (including prednisone and gabapentin), which he kept at home. *Id.* ¶ 2. When Petitioner's pain did not improve "[a]fter several months," Dr. Proctor told Petitioner to see a treater. *Id.* ¶ 4. Dr. Proctor addressed the pain throughout Petitioner's left upper extremity/arm and felt that it "was nothing more than referred pain from her shoulder." *Id.* ¶ 12.

## IV.  Findings of Fact

### A. Factual Findings Regarding QAI Criteria for Table SIRVA

After a review of the entire record, I find that Petitioner has satisfied the QAI requirements for a Table SIRVA.

#### 1.  Prior Condition

The first QAI requirement for a Table SIRVA is lack of a history revealing problems associated with the affected shoulder which were experienced prior to vaccination and would explain the symptoms experienced after vaccination. 42 C.F.R. § 100.3(c)(10)(i).

Respondent has not contested that Petitioner meets the first requirement under the QAI for a Table SIRVA. Additionally, I do not find any evidence that Petitioner suffered a pre-vaccination history of problems that would explain her post-vaccination shoulder symptoms.

#### 2.  Onset of Pain

A petitioner alleging a SIRVA claim must also show that she experienced the first symptom or onset within 48 hours of vaccination (42 C.F.R. § 100.3(a)(XIV)(B)), and that her pain began within that same 48-hour period (42 C.F.R. § 100.3(c)(10)(ii) (QAI criteria)). Respondent argues that Petitioner is unable to meet this requirement because

she did not seek care for more than four months post vaccination – a fact inconsistent with her alleged constant and severe pain. Respondent's Report at 8; Resp. at 2-3. More so, Respondent emphasizes that Petitioner's affidavit evidence (including her husband Dr. Proctor's) does not equate to contemporaneous medical records or a medical opinion – although her husband is a medical doctor. Resp. at 2-3 (citing Ex. 14).

Nevertheless, the totality of the record supports the conclusion that Petitioner's shoulder pain most likely began within 48 hours of vaccination. Even though her first post-vaccination medical appointment was not until January 25, 2018, Petitioner specifically stated at this time that her "September 23rd flu shot caused excruciating pain of the left upper extremity 'like a harpoon'" and the physician noted "[t]here was fulminant symptom onset immediately after painful flu shot administration 09/23/17." Ex. 4 at 30, 33. And there are no intervening records that would undermine the likelihood of a Table-consistent onset.

Petitioner's approximate four-month treatment delay does not undermine her onset assertions. Indeed, I have found *greater* delays not to have undermined an otherwise-preponderantly-established showing of two-day onset. *See, e.g., Tenneson v. Sec'y of Health & Hum. Servs.*, No. 16-1664V, 2018 WL 3083140, at *5 (Fed. Cl. Spec. Mstr. Mar. 30, 2018), *mot. for rev. denied,* 142 Fed. Cl. 329 (2019) (finding a 48-hour onset of shoulder pain despite a nearly six-month delay in seeking treatment); *Williams v. Sec'y of Health & Hum. Servs.*, No. 17-830V, 2019 WL 1040410, at *9 (Fed. Cl. Spec. Mstr. Jan. 31, 2019) (noting a delay in seeking treatment for five-and-a-half months because a petitioner underestimated the severity of her shoulder injury). At most, the delay speaks to the separate issue of Petitioner's pain and suffering – for her injury appears to have been manageable with largely home-remedies for several months prior to her seeking care.

In addition, Petitioner consistently thereafter described the onset of her pain as being on September 23, 2017, following her vaccination. *See,* e.g., Ex. 4 at 63 (a February 8, 2018 PCP for "left arm pain from flu shot . . . since shot [S]ep. 23, 2017"); Ex. 5 at 1 (a February 13, 2018 PT note stating she "received a flu shot on 9/23/17 that felt like a 'harpoon' was driven into her arm."); Ex. 4 at 98 (a March 9, 2018 PCP note reporting "left arm pain since 9/23/2017 . . . she didn't have any pain until after she received the [f]lu vaccine now arm is very painful."). Furthermore, the affidavits submitted by Petitioner corroborate the evidence contained in her medical records, that her shoulder pain began immediately after vaccination. *See* Exs. 1, 15.

### 3.  Scope of Pain and Limited Range of Motion

The third QAI requirement for a Table SIRVA requires a petitioner's pain and reduced range of motion to be "limited to the shoulder in which the intramuscular vaccine was administered." 42 C.F.R. § 100.3(c)(10)(iii). Respondent questions whether Petitioner can establish this criterion, since she reported both a bilateral tremor and pain that "can go from her mid-clavicle down to her elbow and fingers." Respondent's Report at 8-9 (citing Ex. 5 at 1).

This defense to the claim is unavailing. Petitioner's records consistently report left shoulder pain and loss of ROM, as required to substantiate a SIRVA. Petitioner's diagnostic procedures were also limited to her left shoulder, and she received treatment for left shoulder pain. *See,* e.g., Ex. 4 at 30, 33, 54, 64, 66, 68, 98, 159-60; Ex. 5 at 1-3; Ex. 11 at 21. Although there are also references to pain radiating down Petitioner's left arm in a small number of records, the majority of records detail symptoms reflective of a SIRVA, even if they also record pain elsewhere. *See,* e.g., Ex. 5 at 16, 25. In the Program, special masters have routinely found that claims involving musculoskeletal pain *primarily* occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body. *K.P. v. Sec'y of Health & Hum. Servs.*, No. 19-65V, 2022 WL 3226776, at *8 (Fed. Cl. Spec. Mstr. May 25, 2022) (holding that "claims involving musculoskeletal pain primarily occurring in the shoulder are valid under the Table even if there are additional allegations of pain extending to adjacent parts of the body").

Indeed, the third QAI criterion is intended to "guard against compensating claims involving patterns of pain or reduced [ROM] indicative of a contributing etiology beyond the confines of a musculoskeletal injury to the affected shoulder." *Grossmann v. Sec'y of Health & Hum. Servs.,* No. 18-0013V, 2022 WL 779666, at *15 (Fed. Cl. Spec. Mstr. Feb. 15, 2022); *Werning v. Sec'y of Health & Hum. Servs.*, No. 18-0267V, 2020 WL 5051154, at *10 (Fed. Cl. Spec. Mstr. July 27, 2020) (finding that a petitioner satisfied the third SIRVA QAI criterion where there was a complaint of radiating pain, but the petitioner was "diagnosed and treated solely for pain and limited range of motion to her right shoulder"); *Cross v. Sec'y of Health & Hum. Servs.*, No. 19-1958V, 2023 WL 120783, at *7 (Fed. Cl. Spec. Mstr. Jan. 6, 2023) (finding that "despite the notations of pain extending beyond the shoulder, Petitioner's injury is consistent with the definition of SIRVA and there is not preponderant evidence of another etiology").

Here, Petitioner in some circumstances reported instances of pain extending beyond the shoulder, but her injury was otherwise consistent with SIRVA. *See Durham v. Sec'y of Health & Hum. Servs.,* No. 17-1899V, 2023 WL 3196229, at *11-13 (Fed. Cl. Spec. Mstr. Apr. 7, 2023) (finding "this is not a case where the medical records reflect

that the symptoms beyond the confines of the shoulder are incidental to what was otherwise clearly treated as a shoulder injury," as the petitioner showed prominent symptoms of radiculopathy/numbness into the hand and neck, there ultimately was not any confirmed final diagnosis of a shoulder joint pathology, and a cervical etiology was deemed more likely by physicians). The evidence supporting a SIRVA (including an ultimate diagnosis involving a shoulder joint pathology – adhesive capsulitis) can be distinguished from other incidental complaints of pain stemming from the left shoulder into the entire left UE and extending into the elbow and fingers. (And the proper way in the Program to take into account such non-SIRVA evidence is to disregard it when calculating damages).

Similarly, Petitioner's complaints of bilateral tremors (including a "fine" tremor in the left hand and fingers), can reasonably be distinguished. Indeed, such complaints ultimately received a separate suspected diagnosis – an elevated thyroid level – and Petitioner was told to address these symptoms separate and apart from her left shoulder pain and related symptomology. *See,* e.g., Ex. 4 at 77-79 (a March 1, 2018 neurology note instructing Petitioner to follow up with her PCP because she had "no new/progressive neurological deficits" and her tremors could be caused by her thyroid issue and were otherwise not neurological); Ex. 4 at 29 (a February 13, 2018 neurology note reflecting that Petitioner's EMG was normal and her elevated T4 level "would not contribute to the symptoms of pain described but could contribute to [Petitioner's] tremor."). These symptoms thus reflect a comorbid condition that is not relevant to Petitioner's SIRVA (and harms suffered in connection are not associated with the relevant vaccination – meaning no compensation for them will be permitted).

Petitioner has thus established this QAI criterion. (I must note, however, that the degree of pain and ROM issues and the hardships they imposed in this case on Petitioner appear fairly limited – a factor that will be taken into account in calculating damages).

### 4. Other Condition or Abnormality

The last QAI criteria for a Table SIRVA states that there must be no other condition or abnormality which would explain a petitioner's current symptoms. 42 C.F.R. § 100.3(c)(10)(iv). Respondent has not contested that Petitioner meets this criterion, and there is insufficient evidence in the record to the contrary. I must note, however, that any alleged symptoms outside the scope of Petitioner's SIRVA should not be considered in the calculation of damages.

### B. Other Requirements for Entitlement

Based on the above, I find that Petitioner has satisfied all requirements for a Table SIRVA and is entitled to a presumption of causation. However, even if a petitioner has satisfied the requirements of a Table injury or established causation-in-fact, he or she must also provide preponderant evidence of the additional requirements of Section 11(c). The overall record contains preponderant evidence to fulfill these additional requirements.

The record shows that Petitioner received a flu vaccine intramuscularly in her left shoulder on September 23, 2017, in Texas. Ex. 1; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i)(I) (requiring administration within the United States or its territories). There is no evidence that Petitioner has collected a civil award for her injury. Ex. 1; Section 11(c)(1)(E) (lack of prior civil award). Additionally, Petitioner has suffered the residual effects of her shoulder injury for more than six months. *See* Section 11(c)(1)(D)(i) (statutory six-month requirement).

Thus, based upon all of the above, Petitioner has established that she suffered a Table SIRVA – albeit a limited and fairly mild case. Additionally, she has satisfied all other requirements for compensation. I therefore find that Petitioner is entitled to compensation in this case.

### Conclusion

Based on the entire record, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case. A subsequent order will set further proceedings towards resolving damages. (I reiterate my earlier points, however, that this case is not one in which a large pain and suffering award is called for, and therefore Petitioner must factor in the overall mild nature of the injury in seeking damages). **Thus, Petitioner's Motion, ECF No. 40, is GRANTED.**

**IT IS SO ORDERED.**

<u>s/Brian H. Corcoran</u>
Brian H. Corcoran
Chief Special Master